In the Matter of HUDSON INSTITUTE, INC., Appellant, v. FRANK B. CERNESE et al., Constituting the Board of Assessors of the Town of Cortlandt, Respondents.— Judgment and order of the Supreme Court, Westchester County, respectively entered July 16, 1971 and dated August 16, 1971 which (1) dismissed petition to vacate a tax assessment, and (2) denied petitioner's motion (a) to set aside the court's decision dated March 31, 1971, and (b) to open the trial for additional testimony, affirmed, with costs. No opinion. Latham, Acting P. J., Gulotta and Brennan, JJ., concur; Shapiro and Benjamin, JJ., dissent and vote to reverse and grant the petition, with the following memorandum: The issue is whether petitioner is in fact a nonprofit organization entitled to a tax exemption under subdivision 1 of section 420 of the Real Property Tax Law. We believe it is. Petitioner was organized in 1961 as a nonprofit corporation by a group of distinguished citizens. Its charter expressly states that it " shall be operated, exclusively for charitable, educational and scientific purposes ". Its stated purposes are to conduct research and analysis relating to national security and international order; to disseminate information and foster activities to increase knowledge in those areas; to provide a forum for consultation and cooperation with respect to problems in those areas; and, in general, to conduct research and disseminate information of educational, cultural or scientific interest. It is, in short, a " think tank ". It has no stock or stockholders and its affairs are governed by a Board of Trustees, elected by petitioner's members and serving without pay. Petitioner's members number about 100; they are, in the main, national and community leaders, scientists, scholars and some senior research employees of petitioner. Its research staff is made up of about 30 scholars in various fields; and it has about 35 other employees performing technical, administrative and custodial work. Its headquarters (the subject of this proceeding) comprise about 20 acres of land improved with 7 buildings used for conferences, research offices, administration, and a summer dormitory for students. Petitioner bought the property for $250,000, paying $100,000 of that sum by cash which had been donated to it by foundations and private individuals. Petitioner's revenues are derived from donations and " fees " paid it for studies seminars, lectures and publications. About 90% of its income comes from " cost-plus " contracts with U. S. Government agencies; and over the years its " net income " has averaged less than 1%.* Petitioner's main expense item is staff salaries, and they are comparable to those currently being paid by similar institutions for similar work. When staff members write books or articles, or give courses at colleges, the royalties or fees generally go to petitioner; but occasionally some percentage of such royalties will be paid to the staff member if the writing of the book entailed a great deal of extra work in addition to his normal duties. In 1963 the Internal Revenue Service

---

*A report by the Senate to the President (excluded from evidence by the trial court) states that fees paid to non-profit organizations on such " cost-plus " contracts cannot be considered a profit as there are no shareholders; and that such " fees " provide for the operational stability and self-initiated research of the nonprofit organizations (S. Doc. No. 94, 87th Cong., 2d Sess. 19, 1962). We may take judicial notice of this public record (*Sease* v. *Central Greyhound Lines,* 281 App. Div. 192, rev. on other grounds, 306 N. Y. 284; *Matter of Sunhill Water Corp.* v. *Water Resources Com.* 32 A D 2d 1006).

ruled that petitioner is a tax-exempt, nonprofit corporation operated exclusively for educational and scientific purposes, with none of its net earnings enuring to the benefit of any private shareholder or individual. And, as above noted, a Senate Report to the President stated that the fees paid such organizations on cost-plus government contracts cannot be considered a profit. On this record, Special Term held that petitioner was not entitled to a tax exemption because it was organized and is operated as a guise or pretense for making a profit for itself and its staff; and that it was merely "a carefully constructed instrument which is used by its founders and officers to avoid the impact of double taxation while enjoying the benefits of elegant accommodations and substantial salaries." It based that holding mainly on the facts that petitioner "puts money first" by generally getting advance contract commitments from sponsors for payment of the costs of its research, and that staff members occasionally got royalties on books they had written. A majority of this court agrees with that determination and is voting to affirm it. We disagree and believe it should be reversed and a tax exemption granted to petitioner. No different from other nonprofit, tax-exempt organizations is petitioner when it "puts money first". All must first obtain funds before they can do their charitable or educational work. If they lack sufficiently large endowment funds, the income from which can support their activities, they must, perforce, continually obtain new funds in the form of fees or payments for services rendered. Never has it been held that colleges are not tax-exempt because they require tuition fees to be paid in advance; never have hospitals been held taxable because they ordinarily do not admit patients until someone has agreed to pay for their care (see *People ex rel. Doctors Hosp.* v. *Sexton,* 267 App. Div. 736, affd. 295 N. Y. 553; *Matter of Syracuse Univ.,* 59 Misc 2d 684). It is well settled that the charging of fees or making of profit does not subject a nonprofit organization to taxation if the fees or profit are used for the organization's purposes and do not enure to the benefit of its members, officers or employees (*Matter of Syracuse Univ., supra; Butterworth* v. *Keeler,* 219 N. Y. 446, 449; *People ex rel. Watchtower Bible & Tract Soc.* v. *Haring,* 8 N Y 2d 350; *Gospel Volunteers* v. *Village of Speculator,* 33 A D 2d 407, affd. 29 N Y 2d 622; *Matter of Faculty-Student Assn. of State Univ. Coll. at Oswego* v. *Sharkey,* 35 A D 2d 161; *Matter of Ellis Hosp.* v. *Fredette,* 27 A D 2d 390). As the court said in *Butterworth* (*supra,* p. 449): "But the fact that fees are charged is not controlling  *  *  * Most of our universities and hospitals would be excluded by such a test, yet universities and hospitals are unquestionably public charities  *  *  * What controls is not the receipt of income, but its purpose. Income added to the endowment helps to make it possible for the work to go on. It is only when income may be applied to the profit of the founders that business has a beginning and charity an end." And in *People ex rel. Watchtower Bible & Tract Soc.* v. *Harring* the court put it this way (p. 355): "It is a new and inadmissible idea that an organization not organized for profit but for religious or educational purposes loses its status as such because out of the sale of books and pamphlets it makes a first profit which goes into its capital funds or because the distributors of the books make a tiny gain therefrom". Clearly, petitioner is a nonprofit organization, entitled to tax exemption, on the facts in this record and under the guidelines of the cited cases. Its net fees from contracts are less than 1%, and in many years it has had a deficit. All of its income is applied to the cost of its educational and scientific operations. Staff salaries are no greater than those currently

being paid elsewhere for comparable skills and responsibilities. If staff members occasionally get part of the royalties on books they have written, because of the extra work beyond their normal duties, that is not different from the customary practice in our colleges, where faculty members get royalties on books they have written and often do outside consulting work for fees payable to themselves; yet no one has ever contended that this practice disqualifies the colleges from tax exemption. The services performed by petitioner obviously are of incalculable benefit to our society; its founders are outstanding, public-spirited citizens, and its staff members are widely-known scholars and scientists. The Federal Government has recognized its nonprofit, tax-exempt status, and we see no reason in this record to disagree with that conclusion. We therefore vote to reverse and grant the petition.